# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3476

ATC VANCOM OF CALIFORNIA, L.P.,

*Petitioner*,

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent.*

_____

Petition for Review of an Order of
the National Labor Relations Board.
Nos. 31-RD-1434, 31-CA-25022, 31-CA-24875.

_____

ARGUED APRIL 13, 2004—DECIDED JUNE 3, 2004

_____

Before FLAUM, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

FLAUM, *Chief Judge*. This case arose after officials of ATC Vancom of California, L.P. ("ATC") removed postings from a union bulletin board in the weeks leading up to a representation election. Based on a charge filed by the Chauffeurs, Sales Drivers, Warehousemen and Helpers, Local 572, International Brotherhood of Teamsters, AFL-CIO ("the Union" or "the Teamsters"), the General Counsel of the National Labor Relations Board ("the Board") issued a complaint against ATC, alleging that it violated Section 8(a)(5) and (1) of the National Labor Relations Act ("the

Act") (29 U.S.C. § 158(a)(5) and (1)) by unilaterally chang-ing the bulletin-board policy that was established in its collective bargaining agreement with the Union. Following a hearing, the Administrative Law Judge ("ALJ") rejected ATC's state law defense and found ATC to have violated Section 8(a)(5) and (1) of the Act. The Board issued a decision affirming the ALJ's findings and adopting his recommended order. For the reasons stated in this opinion, we affirm the Board's order.

## I.  Background

ATC operates the city bus system in Santa Clarita, California. ATC's bus drivers were represented by the Teamsters which had a collective bargaining agreement with ATC that was in effect from November 1996 to August 2001. Pursuant to a provision contained in the collective bargaining agreement, ATC provided space for a bulletin board for the Union to use. The bulletin board's purpose was to operate as a space for the Union to communicate with the drivers regarding "formal notices of meetings, elections, names of representatives and officers of the Union, and recreational or social events of the Union." The bulletin board was contained in a glass case and located in the driver's room—a break room at the bus yard's admin-istration building. The right side of the bulletin board was considered to belong to the Union, while the left side was used for operational information. During the first eleven months of 2000, George Rodriguez, one of the union stew-ards among the drivers, posted between ten and fifteen Teamsters notices on the bulletin board.

Sometime in the middle of 2000, the United Transportation Union ("the UTU") approached Rodriguez and asked him to solicit authorization cards on its behalf, and requested that he file a petition with the Board to de-certify the Teamsters as the employees' collective bargain-

ing representatives. Rodriguez agreed, and after he filed a decertification petition on November 30, the Board scheduled an election between the Teamsters and the UTU for January 3, 2001. Rodriguez, apparently serving both unions, continued to post Teamsters materials on the bulletin board, while posting UTU notices elsewhere in the facility.

On December 7 or 8, Rodriguez posted a notice on the bulletin board announcing a special meeting for all drivers/operators to be held at a local hotel. After seeing the notice, ATC Operations Manager, Sheri Camuso, removed it from the bulletin board. The following week, on December 14 or 15, Rodriguez posted a similar notice. Again, Camuso removed the notice within hours. This action prompted a meeting between ATC officials and Teamsters representatives. During the meeting Camuso was advised that she was breaching both the collective bargaining agreement and the law by removing Union notices from the bulletin board. She responded that ATC's corporate headquarters had told her that the company must remain neutral in the upcoming election and ATC would no longer allow the Teamsters to post notices concerning the election. On December 26, ATC distributed a memorandum concerning the posting of union materials. It stated in part that to preserve "'employer neutrality' . . . there shall be no literature posted of any kind by either the UTU or the Teamsters on the bulletin boards."

The election was held as scheduled on January 3, 2001 and the UTU defeated the Teamsters. Following the election, the Teamsters filed objections to the election as well as an unfair labor practices claim. The Regional Director for Region 31 of the Board issued a consolidated complaint alleging that ATC had "failed and refused to bargain with the Union" by "unilaterally changing the employee's working conditions by eliminating the Union's bulletin board posting privileges." A hearing on the consolidated complaint

was held before the ALJ. On December 14, 2001, the ALJ issued his decision holding that ATC had violated Sections 8(a)(5) and (1) of the Act and that the violations affected the outcome of the election. The ALJ rejected ATC's defense that its actions were motivated by the California Neutrality Statute, Cal Gov't Code § 16645 (West 2004), holding that because the statute was not in effect in December 2000, "the statute simply had no application." The ALJ recommended that the Board set aside the election, direct a second election, order ATC to cease and desist from "depriving the Union of access to its bulletin board," and post a notice informing its employees that it had violated their rights guaranteed by the Act. The Board affirmed the ALJ's rulings, findings, and conclusions and adopted the ALJ's recommended order. ATC, an Illinois corporation whose principal place of busines is in the state of Illinois, filed a petition for review of the Board's order with this Court.

## II. Discussion

In this case we are asked to review the Board's order finding that ATC violated Section 8 of the Act when ATC revoked the privileges to use the bulletin board granted by the collective bargaining agreement. We review factual findings of the Board to determine if they are "supported by substantial evidence on the record as a whole." *Bob Evans Farms, Inc. v. NLRB*, 163 F.3d 1012, 1017 (7th Cir. 1998). The substantial evidence test "requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree that *could* satisfy the reasonable fact finder. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 377 (1998) (emphasis in original). We review the Board's legal conclusions to "determine whether they have a reasonable basis in the law." *Bob Evans Farms*, 163 F.3d at 1017. The legal conclusions of the Board must be upheld "unless they are irrational or inconsistent with

the [Act]." *NLRB v. Augusta Bakery*, 957 F.2d 1467, 1471 (7th Cir. 1992) (citations and quotations omitted).

The Board concluded that ATC's unilateral action in barring the Union from its own bulletin board was a violation of Section 8(a)(5) and (1). Section 8(a)(1) of the Act makes it an unfair labor practice to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in Section 7 of the Act (29 U.S.C. § 157), which in turn provides employees the "right to self-organization, to form, join, or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." Therefore, an employer violates the Act when it interferes with its employees' right to communicate with their statutory representative. *See St. Francis Medical Center*, 340 NLRB No. 168, 2003 WL 23119210, at *20 (December 31, 2003) (finding that confiscation of union literature tends to restrain and coerce employees). Section 8(a)(5) of the Act makes it an unfair labor practice to refuse to bargain with representatives of its employees. The Act defines the bargaining obligation to prohibit an employer from "unilaterally terminating or modifying a collective bargaining agreement during its effective term." *NLRB v. Manley Truck Line, Inc.*, 779 F.2d 1327, 1329-30 (7th Cir. 1985). Accordingly, an employer violates Section 8(a)(5) and (1) when it makes "mid-term changes in any provision of a collective bargaining agreement relating to a mandatory subject of bargaining, such as wages, hours, or other terms of employment . . . ." *NLRB v. Southwestern Elec. Coop., Inc.*, 794 F.2d 276, 278 (7th Cir. 1986).

ATC does not dispute that it restricted access to the union bulletin board that was mandated under the collective bargaining agreement. ATC contends, however, that the Board erred in rejecting ATC's argument that it was compelled by the California Neutrality Statute, Cal Gov't Code § 16645 (West 2004), to revoke the Teamsters' bulle-

tin-board privileges. ATC argues that the basis for the Board's decision—that the California statute did not go in effect until after the violations of the Act—is clearly erroneous. Moreover, ATC claims that the Board's failure to rule on the issue of whether the Act preempted the California law is inconsistent with its position in other cases and that it violates the Board's statutory obligation of the "centralized administration of national labor policy." ATC also submits that we should order a rehearing because ATC was not permitted to present evidence in support of its state-law defense.

ATC's defenses based on the California Neutrality Statute are wholly without merit. The California Neutrality Statute places limits on the expenditures of state funds and the conduct of state contractors—preventing them from assisting, promoting, or deterring union organizing. The purpose of the Neutrality Statute is to "prohibit an employer from using state funds and facilities for the purpose of influencing employees to support or oppose unionization . . . ." Cal Gov't Code § 16645 (West 2004). The California Neutrality Statute explicitly provides that it "does not apply to an expenditure made prior to June 1, 2001, or to a grant or contract awarded prior to January 1, 2001 . . . ." Cal. Gov't Code § 16648 (West 2004). Thus, in light of the Board's undisputed finding that ATC removed Union notices and implemented a new bulletin-board policy in December 2000, the Board reasonably rejected ATC's defense on the ground that ATC's "unlawful activity occurred before the [California] statute . . . went into effect."

On petition for review, ATC challenges the Board's timing rationale. ATC claims that the Board ignored evidence that ATC also removed a Union notice on January 2, 2001, after the state law went into effect. However, ATC waived this argument by not raising it before the Board. *See NLRB v. Somerville Constr. Co.*, 206 F.3d 752, 755 (7th Cir. 2000).

Moreover, there is no evidence in the record indicating that ATC was responsible for the removal of the notice on January 2.

ATC's additional timing argument—that it took action in December of 2000 to avoid a "'spillover effect' which would enable the California Attorney General to argue that the employer had not adequately complied with the new statute"—is equally unavailing. Again, this argument is not properly before the Court as ATC did not raise it before the Board. Moreover, ATC has not presented us with a sound legal basis for presuming that the statute would be retroactively applied. In fact, ATC's position is belied by the plain language of the statute that states that activity occurring prior to January 1, 2001 is not covered by the statute.

Relying on the Board's decision in *Stein Printing Company*, 204 NLRB 17 (1973), ATC asserts that it had a good-faith reason to abide by the California Neutrality Statute in December 2000, because no court had yet found the statute to be preempted by federal law. However, in *Stein*, the Board failed to adopt the ALJ's good-faith rationale and confined its decision to the circumstance where an employer's compliance with a contractual provision would "clearly" violate "the governing state law." *Id.* at 17 n.2. Even if *Stein* does allow for a good-faith defense, a lack of guidance on the federal preemption issue is insufficient to support a good-faith belief that a law might cover conduct that took place before its effective date. Individuals and entities are not entitled to binding advisory opinions from public agencies or courts that announce the proper operation of laws before they go into effect. It was ATC's responsibility to investigate for itself whether the state law applied to conduct in December 2000, whether the state law would apply to postings on the bulletin board, and whether, if applicable, the state law would be preempted by the Act. ATC apparently failed to engage in this type of inquiry, and

as a result, erroneously attempted to comply with a state law that was not in effect. This sort of undiscerning compliance does not amount to good faith.

We turn now to ATC's argument that the Board was obligated to address the question of whether the California Neutrality Statute was preempted by federal law.[1] As explained above, the preemption issue is not implicated in this case as the state law had yet to go into effect at the time of the violations. To the extent that ATC is concerned that it might face prosecution in the future for complying with its collective bargaining agreement pursuant to the Board's order, ATC has not shown that such a concern is anything more than speculative. ATC does not allege that it has ever been threatened with prosecution. Given the speculative nature of ATC's concern, the Board acted reasonably in deferring consideration of the preemption issue and leaving open the possibility of its reconsideration, "[i]f, in the future, [ATC] is sued under the neutrality statute based on its actions in compliance with this Order."

Lastly, we reject ATC's argument that the Board was obligated to reverse the ALJ's exclusion of evidence supporting its state-law defense. Specifically, ATC sought to introduce evidence of pre-election tension at the facility. However, this evidence is irrelevant to the questions presented by this case, namely whether the state law was in effect in December 2000. As ATC does not contend that the proffered evidence proves that the bulletin board had become a "battleground," *see Nugent Service*, 207 NLRB 158 (1973), which could possibly privilege ATC's conduct, there is no basis for ordering a rehearing.

---

[1] The Ninth Circuit recently addressed this issue and concluded that the NLRA preempts the California Neutrality Statute. *See Chamber of Commerce of the United States v. Lockyer*, 364 F.3d 1154, 1165 (9th Cir. 2004).

## III.  Conclusion

The Board's order is AFFIRMED.


**A true Copy:**

>   **Teste:**


>   _____
>   *Clerk of the United States Court of*
>   *Appeals for the Seventh Circuit*