# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1803

JOHN W. MORANSKI,

*Plaintiff-Appellant*,

v.

GENERAL MOTORS CORPORATION,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:04-CV-0650—**David F. Hamilton**, *Judge*.

———————

ARGUED OCTOBER 24, 2005—DECIDED DECEMBER 29, 2005

———————

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Several years ago, General Motors developed what is now known as its Affinity Group program. The program, which makes company resources available to recognized groups, began as an outgrowth of the company's efforts to support employees from diverse backgrounds and improve company performance. General Motors's Affinity Group Guidelines prohibit the conferral of Affinity Group status on any group promoting or advocating a religious position. Citing these Guidelines, General Motors declined to grant Affinity Group status to employee

John Moranski's proposed Christian Employee Network. We agree with the district court that General Motors's denial of Affinity Group status to Moranski's proposed group did not discriminate against him on the basis of his religion, as the program treats equally all groups with religious positions. Therefore, we affirm the district court's decision to dismiss Moranski's complaint for failure to state a claim upon which relief could be granted.

## I.  BACKGROUND

The allegations that follow are set forth in the complaint and in the General Motors Affinity Group Guidelines attached as an exhibit to the complaint. General Motors ("GM") instituted its Affinity Group program in 1999. The program resulted from efforts to make diverse constituencies feel more welcomed and valued at GM, remove barriers to productivity for all employees, and increase market share and customer enthusiasm in diverse market segments. According to the Guidelines, Affinity Groups "are typically created around an aspect of common social identity that influences how others see them at GM." Affinity Groups are eligible to receive resources including the use of company facilities and equipment for group activities and funds to support the group's mission.

In order to receive Affinity Group status, General Motors must approve the proposed group's request for registration. The Guidelines provide that the company will not recognize as Affinity Groups entities organized only as the result of a common interest or activity, such as golf or theater. The Guidelines also explicitly list other groups that GM will not approve for Affinity Group status, including, as relevant here, groups that "promote or advocate particular religious or political positions." General Motors currently recognizes nine Affinity Groups: People with Disabilities, the General Motors African Ancestry Network, GM Plus (for gay and

lesbian persons), the North American Women's Advisory Council, the GM Hispanic Initiative Team, the GM Asian Indian Affinity Group, the GM Chinese Affinity Group, the GM Mid-East/South-East Asian Affinity Group, and the Veterans Affinity Group. Membership is voluntary and must be open to all current, salaried, full-time employees who share a group's goals.

John Moranski works as a desktop computing architect at GM's Allison Transmission unit in Indianapolis, Indiana. He is a born-again Christian. In December 2002, Moranski submitted an application for recognition of the "GM Christian Employee Network" as an Affinity Group. The application stated that the Christian Employee Network would be an interdenominational group and would not promote a particular church or religious denomination in the workplace. General Motors denied Moranski's application, stating the company's Affinity Group Guidelines preclude groups that promote or advocate religious positions from receiving Affinity Group status.

Moranski filed a complaint with the Equal Employment Opportunity Commission and received a Notification of Right to Sue letter. He then filed suit in federal court, alleging that General Motors discriminated against him on the basis of his religion when it denied his request for Affinity Group recognition. The district court granted General Motors's motion to dismiss for failure to state a claim upon which relief could be granted, and Moranski appeals.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, *Small v. Chao*, 398 F.3d 894, 897 (7th Cir. 2005), accepting as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor. *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). Any written instrument attached to the complaint is considered a part of the complaint. Fed. R. Civ. P. 10(c). In this case, Moranski attached the Affinity Group Guidelines as an exhibit to his complaint and referred to the Guidelines in his complaint. The district court thus properly considered the Guidelines when it ruled on the motion to dismiss for failure to state a claim. *See Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004); *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002).

A Title VII plaintiff need not set forth allegations of a prima facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Instead, a plaintiff alleging discrimination in violation of Title VII must only set forth in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)). Nonetheless, the dismissal of a complaint for failure to state a claim is proper if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 765 (3d Cir. 2004) (affirming dismissal for failure to state a claim of discrimination on the basis of religion and national origin in violation of Title VII); *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (same for claim alleging sexual harassment in violation of Title VII).

B.  Denial of Affinity Group Status

Employer-sponsored diversity initiatives have become increasingly popular. "[M]ajor American businesses have made clear that the skills needed in today's increasingly global marketplace can only be developed through exposure to widely diverse people, cultures, ideas, and viewpoints." *Grutter v. Bollinger,* 539 U.S. 306, 330 (2003) (citing amici briefs submitted by leading American corporations). In an effort to, among other things, support employees of diverse backgrounds, some employers officially recognize employee groups organized on the basis of aspects of social identity. Some of these companies, including Intel (which recognizes groups including the Intel Baha'i Group, Intel Bible-Based Christian Network, Intel Jewish Community, and Intel Muslim Employee Group)[1] and Texas Instruments (the company supports diversity initiatives including the Christian Values Initiative and Muslim Initiative)[2] recognize groups that, although open to both members and non-members of the religion, are organized on the basis of a religious affinity.

General Motors, although it has an Affinity Group program to support employee-organized groups organized around aspects of social identity, declines to sanction any group that promotes a religious position. As a result, when Moranski sought Affinity Group status for the "GM Christian Employee Network," General Motors denied his request. Moranski contends that this denial constituted unlawful discrimination against him on the basis of his Christian religion, in violation of Title VII.

---

[1]  http://www.intel.com/jobs/diversity/people (last visited December 20, 2005).

[2]  http://www.ti.com/corp/docs/company/citizen/diversity/initiatives.shtml (last visited December 20, 2005).

Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). The statute makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is well-established that "[t]he central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else had remained the same." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996). Here, the allegations in Moranski's complaint make clear that General Motors would have taken the same action had he possessed a different religious position.

Although General Motors currently recognizes nine Affinity Groups, Moranski acknowledges that the company has never approved an Affinity Group based on any other religion, nor would the Guidelines allow it to do so. Instead, Moranski argues that General Motors's refusal to grant Affinity Group status to any group that promotes or advocates a religious position means that it treats "non-religious" employees more favorably than religious employees. General Motors, however, has never recognized an Affinity Group that promotes or advocates any religious position, even one of religious indifference or opposition to religion. Nor, as Moranski acknowledges, would the Guidelines allow it to do so. The Guidelines preclude recognition of Affinity Groups based on any religious "position," including agnosticism, atheism, and secular humanism. The Guidelines also prohibit General Motors from recognizing, in Moranski's terms, a group organized on the basis of "non-religion." Simply stated, General Motors's Affinity Group policy treats all religious positions alike–it excludes them all from serving as the basis of a company-recognized

Affinity Group. The company's decision to treat all religious positions alike in its Affinity Group program does not constitute impermissible "discrimination" under Title VII.

It is true, as Moranski points out, that General Motors does recognize Affinity Groups based on race, color, sex, and national origin, the other categories protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1). It does not follow, however, that the company's decision to exclude all groups formed on the basis of religious positions violates Title VII. Unsurprisingly, Moranski does not point us to any authority for his proposition that a court should use cross-categorical comparisons when evaluating Title VII claims. His logic would mean that a company would violate Title VII if it recognized an Affinity Group on the basis of religion but not sex, or granted status to a group on the basis of sex but not to one based on ethnicity. Yet even Moranski concedes Title VII law does not stretch this far, replying instead that a company must allow recognition of a group organized on the basis of whatever an employee deems his or her "main identifying characteristic." This argument does not help Moranski. It has no basis in Title VII law, nor do the Affinity Group Guidelines make any reference to an employee's "main identifying characteristic."

Rather than looking to what an employee might deem his or her "main identifying characteristic," we return again to the language of Title VII, which makes it unlawful for an employer to "*discriminate . . . because of* such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). As we have said before, this statutory text means that the "touchstone of Title VII is, of course, discrimination or disparate treatment." *Holman*, 211 F.3d at 402. In *Holman*, we held a Title VII claim failed where the employer treated men and women equally, explaining:

> Because Title VII is premised on eliminating
> *discrimination*, inappropriate conduct that is
> inflicted on both sexes, or that is inflicted regard-
> less of sex, is outside the statute's ambit . . . . We do
> not think, however, that it is anomalous for a Title
> VII remedy to be precluded when *both* sexes are
> treated badly. Title VII is predicated on *discrimina-
> tion*. Given this premise, requiring disparate treat-
> ment is consistent with the statute's purpose of
> preventing such treatment. . . .

*Id. See also McKenzie v. Milwaukee County*, 381 F.3d 619, 626 (7th Cir. 2004) (failure of female officer to identify similarly situated male officer defeated claim); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 899 (7th Cir. 2003) (reviewing Title VII claim by comparing treatment of African American and Caucasian employees); *Guardian Indus. Corp. v. N.L.R.B.*, 49 F.3d 317, 320 (7th Cir. 1995) ("age discrimination means treating persons 40 and over differently from those who are younger").

Similarly here, Moranski's complaint contains allegations making clear that General Motors refuses to grant Affinity Group status to any group on the basis of any position with respect to religion. It makes no difference that, as Moranski stressed, all employees have a race or gender, but not all might identify with a religion. The Affinity Group Guide-lines treat employees with all religious positions identically: any employee with any religious position may join any of the recognized Affinity Groups, but the company will not recognize as an Affinity Group a group organized on the basis of a religious position. This is not discrimination "because of" religion, and the district court properly granted General Motors's motion to dismiss for failure to state a

claim upon which relief could be granted.[3] Our conclusion on this point makes it unnecessary for us to consider the other arguments General Motors raised in support of the district court's decision.

### III.  CONCLUSION

For the foregoing reasons, the district court's grant of General Motors's motion to dismiss for failure to state a claim upon which relief could be granted is AFFIRMED.

A true Copy:

      Teste:

 

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[3] We note that General Motors is not a federal or state actor. Under the First Amendment to the United States Constitution, a government body may not be able to open a forum for private speech and exclude from that forum speech regarding the entire subject matter of religion. *See, e.g., Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 63 F.3d 581, 592 (7th Cir. 1995).