In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4175

LOCAL 15, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO,

*Plaintiff-Appellant,*

*v.*

EXELON CORPORATION, and its wholly owned subsidiaries,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2746—**Samuel Der-Yeghiayan**, *Judge.*

———————

ARGUED APRIL 9, 2007—DECIDED JULY 31, 2007

———————

Before EASTERBROOK, *Chief Judge*, and KANNE and
WILLIAMS, *Circuit Judges*.

KANNE, *Circuit Judge*. The Local 15, International
Brotherhood of Electrical Workers, AFL-CIO (Union)
objected to Exelon Corporation and its wholly owned
subsidiaries' (Company) implementation of an Automated
Roster Call Out System (ARCOS) used to summon employ-
ees who are not already working to respond to an electrical
outage. Under the terms of the parties' Collective Bargain-

ing Agreement (CBA), the matter was submitted to arbitration after the grievance procedure failed to resolve the dispute. The arbitrator concluded that the Company did not violate the terms of the parties' CBA by implementing ARCOS. The Union filed suit in federal district court challenging the arbitration award. The district court granted the Company's motion to dismiss for failure to state a claim. We affirm.

## I. BACKGROUND

When a storm or other event disrupts the service provided by a public utility, the utility must summon, or "call out", employees who are not at work to quickly restore service to its customers. The Company, in its several forms and locations, and the Union have tried various approaches to the call out problem. Following major power outages to the City of Chicago in the Summer of 1999, the Company attempted to boost call out response rates, but its efforts were unsuccessful. In 2002, the Company developed ARCOS and began discussions with the Union regarding its implementation.

ARCOS sends an automated phone message to employees indicating that there is an electrical outage and need for response. As required by the parties' CBA, the order of the calls gives priority to those employees with the least amount of overtime for that pay period. Employees are required to give the Company three numbers at which they may be reached, and the Company does not provide employees with pagers or cell phones.

Unlike previous call out procedures, ARCOS includes a disciplinary feature. Each employee's call out response rate is tracked, and when it falls below a certain percentage in any three-month quarter, the employee is subject to progressive discipline. Discipline related to call out

response rates is on a separate track from other discipline administered by the Company. However, response rates are not considered for those employees who receive fewer than five calls in a quarter. Thus, an employee who receives fewer than five calls is not eligible for discipline, even if he fails to accept any of them.

The Company initially indicated that the required call out response rate for each employee would be thirty percent. But, following a major storm over the 2003 Fourth of July weekend, the company raised the required response rate to fifty percent. The minimum response rates were not, however, required from the start of the new system. Rather, required response rates were ratcheted up over time.

In response to what it thought was the unauthorized implementation of ARCOS, the Union submitted an unfair labor practice (ULP) charge to Region 13 of the National Labor Relations Board (NLRB) alleging violations of 29 U.S.C. §§ 158 (a)(1), (3), and (5). The NLRB deferred the charge to the parties' arbitration procedure. The arbitrator issued an award after briefing and a five-day hearing. The Union next submitted the arbitration award to NLRB Region 13 and requested that the NLRB not defer to the award, issue an ULP on the grounds that the award was repugnant to the National Labor Relations Act (NLRA), and resume prosecution of the matter. Region 13 denied the request and the NLRB's General Counsel affirmed Region 13's dismissal.

The Union filed a timely action in federal district court challenging the arbitrator's award. The Company filed a motion to dismiss under FED. R. CIV. P. 12(b)(6), and the district court granted the motion finding that: (1) the arbitrator interpreted the contract; (2) the arbitrator did not exceed the scope of his power; and (3) the arbitration award did not violate public policy.

Two provisions of the CBA are relevant to our analysis. First, CBA, Art. II: Union-Company Relationship: 1. (management rights provision), states: "The management of the Company and the direction of the working forces covered herein, including the right to hire, suspend, discharge for proper cause, promote, demote, transfer, and lay off because of lack of work or for other proper reasons, are vested in the Company, except as otherwise specifically provided in this agreement."

Second, Art. V: Working Conditions: 6, states: "If the Company, in writing, requires an employee to have a higher type of telephone service than the employee now has, the Company will reimburse the employee for the additional cost of the higher type of service."

## II. ANALYSIS

The Union argues that it has stated a claim upon which relief may be granted based upon three separate allegations: (1) that the arbitrator evidenced manifest disregard for the law; (2) that the arbitrator exceeded the scope of his authority; and (3) that the arbitration award is against public policy.

We review *de novo* a district court's dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6). *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). We accept "as true all well-pleaded allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Id.* at 539 (citing *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005)). Any written instrument, such as an arbitration award, that is attached to a complaint is considered part of that complaint. FED. R. CIV. P. 10(C); *Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795

F.2d 591, 594 (7th Cir. 1986) ("[I]n considering whether the complaint states a cause of action we must also consider the arbitrator's decision attached to the complaint . . . .").

Notice pleading requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . .". FED. R. CIV. P. 8(a)(2); *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) ("A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (citations and quotations omitted). *But see Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) ("[The] 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.")

The liberal notice pleading standard, however, stands in contrast to the great deference accorded to arbitration awards. "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of this authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citations and quotations omitted); *see also Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("[T]he issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrator has failed to interpret the contract at all . . . ."); *Ganton Techs., Inc. v. Int'l*

*Union, United Auto., Aerospace and Agric. Implement Workers of Am., U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) ("[O]nly if there is no possible interpretive route to the award, so that a noncontractual basis can be inferred, may the award be set aside.") (internal quotations and alterations omitted).

### A.  Manifest Disregard for the Law

The Union argues that the arbitrator evidenced manifest disregard for the law under both the Fair Labor Standards Act (FLSA) and the NLRA. The FLSA claim is easily disposed of. The Union neither raised this argument in its complaint, nor in response to the Company's motion to dismiss. "A party waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on appeal." *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) (quoting *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002)). The Union has waived its argument that the arbitrator has evidenced a manifest disregard for the law by issuing an award that violates the FLSA.

The Union's NLRA claim requires more attention. The NLRA requires employers to bargain with unions over significant changes in working conditions. 29 U.S.C. § 158(a)(1), (5); *see ATC Vancom of California, L.P. v. N.L.R.B.*, 370 F.3d 692, 696 (7th Cir. 2004). The Union argues that the arbitrator's award violates the NLRA by permitting the implementation of ARCOS without requiring the Company to bargain with the Union. The arbitrator's decision specifically addressed this issue: "The Unilateral adoption and Implementation of the new Call Out Policy was not prohibited by any provision of the Labor Agreement or any other agreement, side letter or local understanding and was within [the Company's] authority under the Management Rights Clause. . . . There

is an express management right to promulgate workplace Rules—provided the Rules are reasonable." R. 1, Ex. 1 at 32, 34 (emphasis omitted). When a union agrees to a management rights clause that gives the employer the exclusive right to regulate employee conduct, no further bargaining on the issue is required by the NLRA. *Chicago Tribune Co. v. N.L.R.B.*, 974 F.2d 933, 937 (7th Cir. 1992) ("The union had a statutory right to bargain over the terms of employment, 29 U.S.C. § 158(d) . . . , but it gave up that right, so far as the subjects comprehended by the management-rights clause were concerned, by agreeing to the clause.").

Under the arbitrator's interpretation of the contract, the management rights clause gave the Company the authority to implement ARCOS unilaterally. This interpretation was within the arbitrator's province and dispenses of the unfair labor allegation in this case. The Union has not stated a claim upon which relief may be granted based upon its allegation that the arbitrator evidenced manifest disregard for the law.

### B. Scope of Authority

The Union argues that the arbitrator exceeded the scope of his authority by suggesting that the Company may require employees to pay for their own pagers or cell phones. In his award, the arbitrator stated: "Absent provisions for Company provided pagers or other reasonable method(s) of facilitating call out communication such as but not limited to those used by other Utilities, I find that it was unreasonable to discipline those employees who had responded to at least one call out in a quarter for failure to meet the 50% call out expectation." R. 1, Ex. 1 at 43 (emphasis omitted). In a footnote to this statement, the arbitrator indicates that "[i]t would not be unreasonable to provide the instrument with the employee responsible for monthly costs of use." *Id*. at n.47.

An arbitrator's authority is limited to the interpretation and application of the CBA. *Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 575 (7th Cir. 1996). A legitimate award "draws its essence" from the CBA. *Id.* However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (citations and quotations omitted).

The arbitrator's observations regarding the need for communication devices, in general, were favorable to the Union, because the arbitrator proceeded to rescind all discipline exacted against employees who failed to meet the fifty percent response rate. The arbitrator had previously stated that, under the management rights clause, the Company had the authority to promulgate workplace rules, so long as they were reasonable. R. 1, Ex. 1 at 34. His statement about cell phones and pagers was merely a conclusion that, under the management rights clause, a rule providing devices but requiring employees to pay monthly service fees would be reasonable. The arbitrator's statement did not speak to the viability of Art. V: Working Conditions: 6 of the CBA which specifically pertains to payment for communication services. The arbitrator's statement on this matter was in a footnote, and was not part of the formal award. The arbitrator limited his analysis to the interpretation and application of the CBA, and he did not exceed the scope of his authority.

### C. Public Policy

The Union's final argument is that the arbitrator's award is contrary to public policy. "General appeals to 'public policy' do not permit a court to upset an arbitral award." *Baxter Int'l, Inc. v. Abbot Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) (citing *Eastern Associated Coal Corp. v.*

*Mine Workers*, 531 U.S. 57 (2000); *Paperworkers Union v. Misco, Inc.*, 484 U.S. 29 (1987)). Furthermore, "when a court bars enforcement of an arbitration award on the basis of public policy, that public policy must be clearly defined." *Local No. P-1236, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jones Dairy Farm*, 680 F.2d 1142, 1145 (7th Cir. 1982) (citing *Local 453, Int'l Union of Elec. Workers v. Otis Elevator Co.*, 314 F.2d 25 (2d Cir. 1963)).

The Union argues that the arbitration award is contrary to public policy, because it: (1) violates the NLRA and FLSA; and (2) violates the common law of the shop. The first part of this argument mirrors the Union's argument that the arbitrator evidenced manifest disregard for the law. The arbitrator interpreted the contract and determined that the management rights clause, which the parties had already bargained over, specifically permitted the Company to unilaterally implement ARCOS. This court cannot supplant its own views for those of an arbitrator who has acted within the scope of his authority. *See Wise*, 450 F.3d at 269. The arbitrator's award is not contrary to public policy on the basis of the NLRA or the FLSA.

With respect to the common law of the shop argument, the Union argues that dismissal in the district court was premature because it was not able to submit a number of historical side agreements between the parties that were before the arbitrator. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960) (noting that "industrial common law" is part of the CBA). The arbitrator's award, however, was before the district court. FED. R. CIV. P. 10(c). The arbitrator states in his award: "It is normally held that long standing practices accepted by the parties may not contravene or freeze all conditions of employment and prevent the exercise of basic management rights such as the right to make reasonable Rules to address a major managerial concern. . . . I do not

find that [the Company], by some discussions with the Union prior to Implementing policies, has waived or given up their management right to institute a Rule without agreement of the Union." R. 1, Ex. 1 at 34, 35. The arbitrator specifically found that neither the side agreements nor past practice at the Company prohibited the unilateral implementation of ARCOS. His decision is not against clearly established public policy.

If we sent this case back to the district court so that the Union could introduce the side agreements into the record, as a matter of law, the outcome would be the same. The arbitrator based his decision on his interpretation of the CBA itself and the side agreements before him as the Union gave him authority to do when it agreed to submit labor disputes to arbitration. The Union has had one bite at the apple, and we cannot give it a second. *See Ganton Techs., Inc.*, 358 F.3d at 462.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*