In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-3222

RWB SERVICES, LLC,

*Plaintiff-Appellant,*

*v.*

HARTFORD COMPUTER GROUP, INC., ET AL.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 1073—**Ruben Castillo**, *Judge.*

_____

ARGUED MAY 9, 2008—DECIDED AUGUST 25, 2008

_____

Before FLAUM, KANNE, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* The plaintiff-appellant, RWB Services, LLC, says that the defendants misappropriated used cameras in which it had security interests and then resold the cameras as new to Wal-Mart. In the district court, the vessels for this allegation were a number of state-law claims and one civil count under the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. § 1964(c)—the latter of which forms the basis of this appeal. Below, the defendants moved to dismiss the RICO count under Rule 12(b)(1), arguing that the plaintiff lacked the requisite standing and, as a result, the district court did not have subject matter jurisdiction. The district court agreed, dismissed the RICO claim, and remanded the remaining state-law claims to the Circuit Court of Cook County. This appeal resulted, and for the reasons that follow, we reverse.

## I. Background

The allegations in this case stem from a commercial lending agreement originally entered into between RWB Services and a now-defunct company called Old Argus in 2003. The agreement was for the purchase and sale of cameras. Under the terms of the agreement, Old Argus would secure the sale of a number of cameras to a particular retailer, in this case Wal-Mart. After being notified of the sale, RWB Services would purchase the needed number of cameras from vendors on Old Argus's behalf, and Old Argus would then deliver the cameras to and receive payment from Wal-Mart. The proceeds from these sales would go into a bank account held by a special purpose entity, WIP Marketing, Inc., created for purposes of the lending arrangement. RWB Services would then draw down Old Argus's debt from this account. To ensure that this would happen, RWB Services retained a security interest in all of WIP Marketing's assets including, specifically, the purchased cameras.

With one minor hitch,[1] the parties followed this process the first time through, and on June 3, 2003, RWB Services loaned Old Argus an additional $951,000 to purchase another set of cameras. Unbeknownst to RWB Services, however, storm clouds had gathered over Old Argus's general ledger, and shortly after agreeing to the second round of financing, Old Argus entered into an assignment for the benefit of creditors, with a company called Rally Capital Services, LLC as the assignee. After allegedly chasing off two other bidders,[2] Rally Capital eventually sold all of Old Argus's assets for approximately $1.3 million to another defendant, Hartford Computer Group, Inc. As part of the sale, Hartford agreed to collect Old Argus's existing receivables but was expressly precluded from obtaining any interest in the WIP Marketing inventory or any of the cameras funded by RWB Services. All moneys owed for the cameras were to go to RWB Services, as were, importantly, any returned cameras.

---

[1] Rather than go into the account set up by WIP Marketing, the payment went into a BankOne account held by Old Argus. The parties then agreed that these funds would go to RWB Services to repay the loan.

[2] RWB Services alleges that Hartford (and possibly Rally Capital) engaged in a mock bid to justify turning away two other bidders. Specifically, RWB Services says that two other bidders offered to purchase Old Argus's assets for $2.4 million. Hartford then submitted a slightly higher bid for $2.5 million, which Old Argus's assignee told the two bidders it would accept. At some point, Hartford allegedly withdrew this bid and, without contacting the two rebuffed bidders, Rally Capital eventually accepted a much lower bid for $1.3 million.

It is what followed that resulted in this case. RWB Services alleges that Hartford and its managers—defendants Anthony Graffia Senior and Junior—cooked up a scheme to defraud Old Argus's former customers. For any number of reasons, retailers like Wal-Mart will return cameras to their distributors; customers may return unwanted but functioning cameras or there could be something wrong with the camera itself. When this happened under Old Argus's watch, Old Argus would give its customer a credit for any returned cameras, which the customer could then draw from in making future purchases. When Hartford took over Old Argus's assets, there were a number of returned cameras from Wal-Mart that Old Argus still had in its possession. RWB Services alleges that, rather than return these cameras to RWB Services as required, Hartford instead repackaged and then resold them to Wal-Mart as new. In addition, it claims that Hartford both told Wal-Mart to pay amounts owed for kept cameras directly to Hartford—rather than to RWB Services—and took possession of returned cameras from Wal-Mart—rather than send them to RWB Services as promised. RWB Services claims that Hartford sold 50,000 repackaged cameras as new.

Realizing that the faucet of payments for its loan had dried, RWB Services demanded payment from Hartford, a request that Hartford refused. RWB Services claims that this scheme of repackaging cameras and selling them as new continued apace through at least March 2005, involving both its cameras and those of others. That month, Hartford transferred most of its assets to a new company, Impero Electronics, which RWB Services alleges was a

shell for the Graffias. Impero allegedly continued on with Hartford's alleged scheme, repackaging different brands of returned cameras as new.

RWB Services initially filed suit against Hartford, Impero, Rally Capital Services, and the Graffias in 2004. In January 2007, RWB Services filed its Fourth Amended Verified Complaint, which added to the nine state-law claims a new one alleging a RICO violation against the Graffias, Hartford, and Impero. The defendants removed the case to the Northern District of Illinois. And on August 22, 2007, the district court granted the defendants' motion to dismiss, reasoning that RWB Services had failed to show standing to sue under RICO. The basis for its jurisdiction was the federal RICO claim, and, after this claim fell, the court relinquished supplemental jurisdiction over the remaining state claims. This appeal followed.

## II. Discussion

The civil RICO cause of action arises under 18 U.S.C. § 1964(c), which provides

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

As is relevant here, this cause of action requires RWB Services to adequately plead three things: (1) an "injur[y] in [its] business or property" (2) "by reason of" (3) the

defendants' "violation of section 1962." *See* 18 U.S.C. § 1962(c). The district court held that RWB Services failed at step two, a decision we review de novo, accepting any factual allegations that RWB Services has properly pled. *See Vicom, Inc. v. Harbridge Merchant Svces, Inc.*, 20 F.3d 771, 776-77 (7th Cir. 1994).

RWB Services alleged in its pleadings that its injury arose because it "was deprived of its property which Defendants stole or obtained by fraud [and] then fraudulently resold as new." When Hartford purchased Old Argus's assets, the sale expressly excluded RWB Services' cameras. Nonetheless, Hartford kept the returned cameras sent back from Wal-Mart and then resold them as new. As a result, RWB Services' "property" was thus "injured" when Hartford converted these cameras to use in its purportedly fraudulent scheme.

In addition to its injury, RWB Services alleged that the defendants had "violat[ed] 18 U.S.C. § 1962," specifically sections 1962(c) and (d). Section 1962(c) makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). And section 1962(d) makes it "unlawful for any person to conspire" to violate any other subsection of section 1962. 18 U.S.C. § 1962(d). In RWB Services' estimation, the Graffias both operated an "enterprise" involved in interstate commerce—Hartford, then

Impero—through a "pattern of racketeering activity," 18 U.S.C. § 1962(c) and conspired to do the same, 18 U.S.C. § 1962(d).

To prove the "pattern of racketeering activity," RWB Services pointed to the violation of five of the statutes laid out or referenced in 18 U.S.C. § 1961(1) as predicate acts: the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1; 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); and 18 U.S.C. § 2314 (the inter-state transportation of stolen or fraudulently obtained property). Four of these acts relate to the scheme to de-fraud Wal-Mart by selling repackaged cameras as new, consisting of the three claims of fraud and one of deceptive trade practices under Illinois law. The other act alleges the transportation of stolen or fraudulently obtained property across state lines, an act that relates to RWB Services' loss of its cameras. The parties do not dispute here that RWB Services has properly pled a "violation of section 1962."

The question on appeal is instead whether RWB Services showed that its injury occurred "by reason of" this alleged "violation." Such a showing proves the plaintiff's standing and is thus jurisdictional. *Gagan v. American Cablevision*, 77 F.3d 951, 958 (7th Cir. 1996). And to make it, the plaintiff must prove, among other things, that the "pattern of racketeering activity" both factually and proximately caused its "injur[y]". *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). The district court held that RWB Services had failed to show either. As for factual or

"but for" causation, the district court pointed to a "gap" in RWB Services' causal chain: The court doubted that RWB Services would still have received the cameras back even if Hartford had not defrauded Wal-Mart with them. The court also reasoned that RWB Services was not the "direct victim of Defendants' alleged scheme." Accordingly, Wal-Mart or its customers would be better plaintiffs because the alleged scheme was primarily to defraud them. Having failed on both fronts, the court held that RWB Services did not have standing—and thus the court did not have jurisdiction—and dismissed the complaint.

We disagree with both conclusions. First, RWB Services properly pled cause in fact. RICO's civil provision gives a cause of action for those "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The question here is whether the plaintiff's injury would have occurred "but for" the "violation of section 1962." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 , 268 (1992); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985) ("If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)."); *see also Evans v. City of Chicago*, 434 F.3d 916, 926 n.22 (7th Cir. 2006). The typical question asked in determining cause-in-fact is counterfactual: would the claimed injury still have happened if the defendant had not engaged in the tortious conduct alleged? *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS 264 (5th ed. 1984); RESTATEMENT (THIRD) OF TORTS: LIABIL-ITY FOR PHYSICAL HARM § 26, cmt. b (Proposed Final Draft

No. 1 2005). This inquiry is a straightforward one in the mine-run tort or negligence claim. A railway fails to fence off a railroad track, and a child is struck by a train; had the railway put up a fence, the child could not have accessed the tracks and the accident would never have happened. *See* PROSSER AND KEETON ON TORTS, at 264. Or one person converts another's property; but for the conversion the loss of property would not have occurred.

Under RICO, however, such a simple question is harder to ask. A defendant is liable for a "violation of section 1962," and such a "violation" consists of, among other things, a "pattern of racketeering activity," which in turn results from at least two predicate acts each with its own essential elements. The district court reasoned that, if the defendants had not obtained RWB Services' cameras in order to defraud its customers, they would have misappropriated the cameras anyhow or still refused to repay the loan.[3] Or, in other words, but for the actions underlying a few of the predicate acts alleged—those four constituting the scheme to defraud Wal-Mart—RWB Services' injury would still have occurred. A literal ap-

---

[3] The district court's opinion also appears to limit the alleged injury to the lost stream of payments from Hartford, a breach of contract claim. There is admittedly some looseness at points in the complaint with respect to the injury. But RWB Services' alleged injury as it relates to the final predicate act concerns its lost cameras. Nonetheless, for the reasons stated by the district court, we agree that RWB Services could not show causation under section 1964(c) with respect to this stream of payments, as opposed to its stolen or lost cameras.

plication of the "but for" counterfactual could lead to this articulation of the standard; for it is undeniably true that but for the existence of the "pattern," or a predicate act, or its elements, there would be no "violation of section 1962."

But we think the relevant question is instead whether the plaintiff's alleged injury would have resulted but for the entire "violation of section 1962." *Anza*, 547 U.S. at 457 (listing requirement that "the defendant's violation . . . was a 'but for' cause of his injury") (quoting *Holmes*, 503 U.S. at 268); *cf.* 1 DAN B. DOBBS, THE LAW OF TORTS 417-18 (West Group 2001). Although the plaintiff still must allege an injury resulting from one of the predicate acts, *see Beck v. Prupis*, 529 U.S. 494, 506 (2000), courts must examine these acts in the context of the entire "violation" when assessing factual causation. If a predicate act was sufficient to cause the plaintiff's injury and that predicate act was part of the entire "violation of section 1962," the plaintiff has pled causation.

Here, the allegations in the complaint are that the defendants developed a scheme to defraud Wal-Mart and other customers by stealing or fraudulently obtaining used cameras and reselling them as new. One part of the scheme consisted of defrauding Wal-Mart. Specifically, RWB Services alleges that the "Defendants' pattern of racketeering is evidenced by [their] ongoing actions of fraudulently and illegally selling returned, repackaged cameras . . . as new." In turn, RWB Services pled four predicate acts relating to these purportedly fraudulent sales: deceptive business practices under Illinois law, and federal mail,

wire, and bank fraud. The other part of the scheme consisted of obtaining the cameras. RWB Services alleges that the defendants "obtained the returned RWB cameras by fraud." Specifically, RWB Services says that Hartford improperly kept its cameras after purchasing Old Argus's assets and kept returned cameras from Wal-Mart rather than send them back to RWB Services. Nor, as alleged, was RWB Services alone; there were other alleged victims who lost their cameras as part of this scheme. These allegations relate to the last predicate act: the interstate transportation of stolen or fraudulently obtained property. 18 U.S.C. § 2314.

The district court did not question and the parties do not dispute that these two parts of the scheme collectively formed a "pattern," meaning they were related and in some sense ongoing. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989); *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004). So we assume that the requirement has been met, as the parties have waived the issue. *Local 15, Intern. Brotherhood of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) (quoting *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002)). As a result, the part of the scheme concerning the acquisition of the cameras did not happen for just any reason. Instead, as alleged, the defendants took them precisely because of the need for the cameras in order to "violat[e] section 1962." And as the one whose property was allegedly stolen or fraudulently obtained as part of this "violation," RWB Services has pled the requisite causal connection between its injury— lost cameras—and the scheme.

Second, we disagree that RWB Services' injury was not proximately caused by the "violation of section 1962." Proximate cause is a flexible concept that "label[s] generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 269 (1992). At some point, even those who may claim a factual injury are too far removed from the tortious act to be able to recover. In examining whether a RICO violation proximately caused the plaintiff's injury, "the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Saying that the injury to the plaintiff is "direct" is akin to saying that the victim was reasonably foreseeable, the traditional principle for hemming in tort liability. Such directness obviates the difficulty in assessing damages from indirect injuries; avoids complicated rules for apportioning damages among several injured parties with greater or lesser injuries; and provides the requisite level of deterrence for RICO tortfeasors. *Holmes*, 503 U.S. at 270. The district court reasoned that because Wal-Mart was the victim of the fraud, which formed the greater part of the "violation," it was a distinctly better plaintiff than RWB Services. The injury that RWB Services suffered, the court surmised, was simply a bump in the road on the path to defraud Wal-Mart.

But here RWB Services was a direct victim of the alleged scheme, even if Wal-Mart was one as well. The existence of multiple victims with different injuries does not fore-

close a finding of proximate cause; in fact, one of the hallmarks of a RICO violation is "the occurrence of distinct injuries" affecting several victims. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986) (discussing "pattern" requirements and listing "relevant factors" as "includ[ing] the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries"). In addition, the predicate act that RWB Services claims injured it—essentially fraud or theft of an interstate nature—has as its victims those who have their property stolen or fraudulently obtained; and here, that is RWB Services. *See United States v. Bond*, 231 F.3d 1075, 1077-79 (7th Cir. 2000); *United States v. Dickerson*, 901 F.2d 579, 584-85 (7th Cir. 1990). Nor is it dispositive that the scheme envisioned defrauding Wal-Mart as well, who could also potentially bring a RICO claim. The existence of a "better" plaintiff is most relevant where the plaintiff alleges only an indirect injury. *See Holmes*, 503 U.S. at 272-74; *Anza* 547 U.S. at 461. It will not otherwise be grounds for denying a claim to a plaintiff directly injured by one predicate act in the hopes that a different one will emerge. As alleged, the defendants robbed Peter to defraud Paul; the former is as foreseeable a plaintiff as the latter with as direct an injury. As a result, RWB Services properly alleged that the "violation of section 1962" proximately caused the loss of its cameras.

### III. Conclusion

For the foregoing reasons, we REVERSE the decision below and REMAND for further proceedings consistent with this opinion.

---