In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-2753

GLEN HEFFERMAN,

*Plaintiff-Appellant,*

*v.*

YALE P. BASS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 5748—**Paul E. Plunkett**, *Judge.*

ARGUED JANUARY 10, 2006—DECIDED OCTOBER 19, 2006

Before BAUER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This lawsuit arose out of a business partnership that went sour. Glen Hefferman, John St. Pierre, and attorney Yale P. Bass were all involved in an ill-fated car wash venture. Hefferman contended that St. Pierre stole $50,000 that Hefferman had invested in the car wash and deprived him of the value of his legal interest in the business; he also claimed that St. Pierre breached his fiduciary duty, committed fraud, and breached a contract. Bass, Hefferman charged, committed legal malpractice and aided, abetted, or otherwise participated in St. Pierre's fraud and breach of fiduciary duty. The district court entered a default judgment in Hefferman's favor against St. Pierre for $54,000. The court found, however, that Hefferman had failed to state a claim against Bass.

Hefferman appeals the dismissal of his complaint against Bass; St. Pierre is nowhere to be found and thus has not challenged the default judgment against him. We reverse and remand for further proceedings consistent with this opinion.

**I**

When reviewing a dismissal under Rule 12(b)(6), we present the facts in the light most favorable to Hefferman. See *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 817 (7th Cir. 2006). Hefferman is a former Illinois public schoolteacher who has since relocated to California. In 2003, St. Pierre, one of his longtime acquaintances, approached him with a plan to become partners in a car wash in Skokie, Illinois. At St. Pierre's request, Hefferman supplied about $25,000 for start-up costs, such as equipment and a lease. Later on, Hefferman provided another $25,000; Hefferman also worked at the car wash several hours a day during the summer of 2003 without being paid.

In July 2003, St. Pierre took Hefferman to Bass's office and told Hefferman "that Bass would take care of the legal paperwork." At St. Pierre's request, Hefferman paid Bass's legal fees, which came to more than a thousand dollars. Hefferman "understood from what St. Pierre told him that Bass was to represent both him and St. Pierre in rendering these services." Bass assured Hefferman, "I'm your guy. I'll make sure you're protected and you get what's been agreed." Hefferman contends that Bass did no such thing. Not only did he fail to deliver on his promises, but he also prepared a release used to trick Hefferman into relinquishing his interest in the business. St. Pierre showed up at Hefferman's house in the middle of the night with that release and convinced Hefferman to sign it by showing him only the second page, which stated that St. Pierre indemnified and held Hefferman "harmless from any liability" under the lease of the car wash building. But the first page of the release, which Hefferman did not see when

he signed, indicated that Hefferman "had resigned as officer and stockholder" of the car wash. In the summer of 2004, not having received any profit on his investment nor a salary for working in the business, Hefferman visited St. Pierre and sought an accounting or the return of his investment. St. Pierre refused, telling Hefferman that he was not entitled to anything.

Hefferman sued St. Pierre and Bass under federal diversity jurisdiction. (Although Hefferman recovered only $54,000 in the default judgment, his original claim also sought damages for the value of his interest in the business and punitive damages; there is thus no reason to think that it did not exceed $75,000.) St. Pierre defaulted, and Bass moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6). The district court found that Hefferman had failed to state any claim against Bass and dismissed the case. Hefferman appeals.

## II

### A

The only issue before us is whether Hefferman's second amended complaint states a claim or claims against Bass. We begin our analysis with a reminder about the standards for evaluating a motion under Rule 12(b)(6). As we noted earlier, we review the facts in the light most favorable to Hefferman. No claim should be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). See also *McCready v. EBay, Inc.*, 2006 WL 1881142, at *3 (7th Cir. July 10, 2006).

Rule 12(b)(6) does not stand alone. In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), the Supreme Court stated: "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments

of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts." *Id.* at 513. The Court also underscored the fact that "[o]ther provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard." *Id.* See *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005). See also *Bell Atlantic Corp. v. Twombly,* 425 F.3d 99 (2d Cir. 2005), *cert. granted,* 126 S.Ct. 2965 (2006) (presenting the question whether a claim under the Sherman Act § 1, 15 U.S.C. § 1, requires heightened pleading).

Rule 8(a) requires only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." As the Supreme Court pointed out in *Swierkiewicz,* 534 U.S. at 511-14, and as we reiterated in *McDonald*, "This is a notice pleading standard, not a fact pleading standard." 425 F.3d at 427. The point of a notice pleading standard is that the plaintiff is not required to plead either facts or legal theories. See *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (complaints do not need to match facts to "elements" of a legal theory). See also *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) ("In this regard, the Supreme Court has cautioned that '[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

This notice pleading regime stands in contrast to the fact pleading Illinois has adopted. "While the plaintiff is not required to set forth evidence in the complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions." See *Marshall v. Burger King Corp.*, 2006 WL 1703488 (Ill. June

22, 2006) (Analysis section, ¶ 1) (internal citations omitted). In Illinois, the plaintiff must set forth sufficient facts to satisfy each element of a claim. See *id.* ¶ 2.

In this case, whether they meant to or not, both the parties and the district court took an approach that resembled the Illinois fact pleading rules far more than notice pleading of Rule 8. The district court criticized Hefferman's pleadings under his legal malpractice claim for failing to allege facts supporting each of the elements of the claim. The court took the same approach with respect to Hefferman's theory that Bass had aided and abetted St. Pierre's swindling. But Rule 8 imposes no such requirement. See *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). That this case was brought under federal diversity jurisdiction, see 28 U.S.C. § 1332, and thus state law governs the substantive rights of the parties, makes no difference. The Federal Rules of Civil Procedure apply to all cases filed in federal court, no matter what the basis of subject matter jurisdiction. See *Hanna v. Plumer,* 380 U.S. 460 (1965). That fact makes *Torres v. Divis*, 494 N.E.2d 1227 (Ill. App. 1986), which both Hefferman and Bass discuss at length in their briefs, and the other Illinois cases they mention, utterly irrelevant. *Torres* is similar to this case in that it involves pleading in a legal malpractice and breach of contract case, but it is decided within the framework of Illinois's fact pleading rules and therefore inapplicable. In federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of "causes of action"; not legal theories.

B

Regardless of what Hefferman may be able to prove at a later stage of this litigation, Count IV of Hefferman's second amended complaint certainly gives notice of the malpractice claim. Under Illinois law, legal malpractice requires (1) an attorney-client relationship, (2) a negligent act or breach, (3) proximate cause, and (4) damages. See

*Webb v. Damisch*, 842 N.E.2d 140, 146 (Ill. App. 2005). The district court found that Hefferman had not properly alleged two elements—the attorney-client relationship and proximate cause. But from the point of view of notice, rather than elements of a claim, this complaint said more than enough: "Hefferman understood from what St. Pierre told him that Bass was to represent both him and St. Pierre in rendering these services"; "Bass then told Mr. Hefferman that . . . 'I'm your guy. I'll make sure you're protected and you get what's been agreed'"; "Bass then asked Mr. Hefferman for an advance payment of fees . . . and Mr. Hefferman there and then paid Bass several hundred dollars"; "As Mr. Hefferman's attorney, Bass owed Mr. Hefferman the professional duties of, *inter alia,* candor, honesty, loyalty and competence." The complaint also alleged that Bass's breach of his fiduciary duties to Hefferman caused Hefferman's losses, stating in part that "[b]ut for Bass's breach of his fiduciary duties to Mr. Hefferman . . . Mr. Hefferman would [ ] have been able to protect his interest in the Skokie car wash and would not have lost his share of the ongoing and future profits of that business." While at some later stage of the litigation, it might turn out that the facts show that Bass had an attorney-client relationship only with the car wash itself, not with Hefferman (as the district court concluded), that conclusion cannot be drawn if one looks at the pleadings in the light most favorable to Hefferman. Indeed, the district court itself recognizes that "[c]onceivably, the complaint could be read to require that Bass look after the interests of both shareholders and company so long as there was no conflict of interest." See, *e.g.*, *Manion v. Nagin*, 394 F.3d 1062, 1069 (8th Cir. 2005) (finding that the pleadings left open a question about who exactly was represented by the attorney accused of malpractice).

We recognize that there is always some danger when a plaintiff puts facts in her complaint that she may plead herself out of court, because the facts pleaded preclude recovery. See *McCready,* 2006 WL 1881142, at *4.

Hefferman, however, did not fall into that trap. The district court dismissed Hefferman's claims because of the absence of facts that demonstrated his potential to recover, not because the facts pleaded were inconsistent with recovery. In the absence of a pleading that clearly precludes a claim, "[a]t this stage of the litigation, we are concerned not with what plaintiff did or did not show, but rather with what plaintiff did or did not allege." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). Regardless of what he may prove later, Hefferman satisfied Rule 8's requirement that he provide notice of his malpractice claim.

## C

The adequacy of Hefferman's allegations with respect to his aiding and abetting claim in Count V presents a more difficult question. Hefferman alleges that Bass aided and abetted St. Pierre in both St. Pierre's breach of fiduciary duties and in St. Pierre's fraud. In the first place, Bass argues that as a matter of law this circuit does not recognize aiding and abetting as a tort, citing *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000), and *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 452-53 (7th Cir. 1982). Bass is technically correct but misses the point. What these opinions say is that aiding and abetting is a theory for holding the person who aids and abets liable for the tort itself; the rejection of aiding and abetting as an independent tort is not the same thing as saying that there is never liability for aiding and abetting. See *Refco*, 229 F.3d at 624 ("Law should be kept as simple as possible. One who aids and abets a fraud is guilty of the tort of fraud (sometimes called deceit); nothing is added by saying that he is guilty of the tort of aiding and abetting as well or instead."); *Cenco*, 686 F.2d at 453 ("Anyone who would be guilty in a criminal proceeding of aiding and abetting a fraud would be liable under tort law as a participant in the fraud, since aider-abettor liability requires participation in the criminal venture."). Furthermore, this is a diversity

case, governed by the law of Illinois. See generally *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Recent Illinois decisions recognize aiding and abetting liability. Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation. See *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003). To the extent that the question is whether Hefferman adequately alleged that Bass aided and abetted St. Pierre's breach of his fiduciary duty, we look again to Rule 8. Once again, we conclude that the complaint provided sufficient notice to Bass.

To the extent that the claim is that Bass aided and abetted St. Pierre in committing fraud, however, there is a higher pleading standard. Federal Rule of Civil Procedure 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This is a heightened pleading standard, which requires more than the plain statement of the claim of Rule 8. Rule 9(b) requires that facts such as "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff" be alleged in detail. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). In contrast, even under Rule 9(b) "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Furthermore, Rule 9(b) does not require a plaintiff to demonstrate that a representation was indeed false. *Bankers Trust Co.*, 959 F.2d at 683.

In this case, Hefferman's complaint adequately identifies the person making the misrepresentation—St. Pierre. We also have the time, the place, and the content of the misrepresentation. According to the complaint, the time was "some time in late August or early September" 2003

"late at night—it was after midnight." The place was Hefferman's home in Chicago. The misrepresentation was St. Pierre's statement that the release, an unsigned copy of which Hefferman attached to the complaint, only gave St. Pierre sole responsibility for the car wash building lease as opposed to control over Hefferman's interest in the business itself. The manner in which it was communicated was orally by St. Pierre to Hefferman at that middle-of-the-night meeting. Indeed, there are multiple misrepresentations alleged in Hefferman's complaint; this is merely the central one. The district court found that Hefferman sufficiently alleged that Bass aided St. Pierre and that St. Pierre committed a wrongful act, but that "nothing in the allegations even suggests that Bass knew (as opposed to should have known) either that St. Pierre was engaged in a fraud or that Bass willingly joined in his scheme." That point, however, relates to Bass's "knowledge" or "condition of mind," which as noted above Rule 9(b) permits to be alleged generally. The complaint does just that, when it says that "Bass's participation in St. Pierre's fraud and breach of fiduciary duty was knowing and intentional." Furthermore, the complaint also specifically identifies the assistance provided—the drafting of the release itself. Thus, to the extent that Hefferman's claims against Bass turn on fraud, we find that Hefferman's complaint satisfies Rule 9(b).

## III

For these reasons, the judgment of the district court is REVERSED and this case is REMANDED to the district court for proceedings consistent with this opinion.
A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—10-19-06