In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3295

FIFTH THIRD MORTGAGE COMPANY,

*Plaintiff-Appellee,*

*v.*

IRA KAUFMAN, *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 04693 — **Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 15, 2019 — DECIDED AUGUST 9, 2019

Before WOOD, *Chief Judge,* and BAUER and ST. EVE, *Circuit
Judges.*

BAUER, *Circuit Judge.* Fifth Third Mortgage Company sued
several individuals and businesses after it fell victim to a
mortgage fraud scheme. At issue in this appeal is the personal
liability of Ira Kaufman. Kaufman participated in numerous
fraudulent closings as the attorney for the seller. Kaufman is

also the owner of Traditional Title Company, LLC, which was
the title company used for several closings that facilitated the
fraud. For the reasons that follow, the judgment against
Kaufman is affirmed.[1]

## I. BACKGROUND

The mortgage fraud scheme at issue began with Yaseen
Ahmed, the president of High Point Developers, Inc. Ahmed
also co-owned 4725 S. Michigan, LLC, which owned a condo-
minium building located at 4725 S. Michigan Avenue. Ahmed
obtained the proceeds of 35 mortgage loans through false
statements and omissions made in loan applications and
supporting documentation by purported buyers. Ahmed and
five others pleaded guilty to criminal offenses related to the
scheme.

Ahmed and another man, Eliot Higueros, recruited individ-
uals to pose as buyers for units at 4725 S. Michigan Avenue.
These straw buyers submitted fraudulent loan applications to
various lenders, including Fifth Third. The participants in the
scheme split the loan proceeds when disbursed; no payments
were ever made on the loans.

Nine different borrowers purchased 26 properties at 4725 S.
Michigan Avenue. 4725 S. Michigan, LLC was the seller and
Kaufman was its attorney for each of the closings. The closings
were conducted by Traditional Title, and took place at Kauf-
man's law office. The loan applications contained misrepresen-

---

[1]  Traditional Title, LLC is a co-appellant with Ira Kaufman. However, no
argument is made in appellants' brief about the judgment entered against
Traditional Title, LLC.

tations about the buyers' employment status, assets, and income. The applications also falsely indicated the units were going to be the primary residences of the buyers, despite each buyer purchasing multiple units in the building.

Traditional received closing instructions from Fifth Third that required it to notify the bank immediately of any misrepresentations that would influence the bank's decision to make the loan. The instructions also required Traditional Title to suspend the transaction and notify Fifth Third if "the loan is owner occupied and the closing agent has knowledge that the borrower does not intend to occupy the property." Kaufman failed to abide by either requirement by concealing the buyers' misrepresentations from Fifth Third and instructing closing agents to complete closings even when buyers were purchasing multiple properties.

Ahmed then extended the scheme to units in other buildings. Fifth Third was the lender for four of these properties. Kaufman participated in the transactions as the attorney for the seller; Traditional Title did not participate in these closings.[2] These properties include: unit 5 at 6621 S. Ingleside Avenue; unit 2 at 7919 S. Phillips Avenue; unit 1 at 5416 S. Michigan Avenue; and unit G at 5416 S. Michigan.

Kaufman testified that he was not aware of the mortgage fraud scheme. He claimed that he reviewed the numbers for the sales but "didn't really look at the people." He also said

---

[2] Kaufman also acted as the seller's attorney in several fraudulent transactions where Fifth Third was not the lender; these related transactions are detailed further in the district court's opinion.

that it was not his job as the seller's attorney to review the closing instructions or the buyer's loan application. Ahmed testified that Kaufman knew the buyers were part of the scheme. Two closing agents, Julio Martinez and Michael Lee, testified that they informed Kaufman about the misrepresentations in the loan applications. Kaufman testified that they never gave him that information.

Fifth Third filed seven claims of fraud against Kaufman, based on his knowledge that the individuals had been recruited as straw buyers, and that they made false representations in their loan applications. After a bench trial, the district court entered judgment for Fifth Third against Kaufman.

## II. ANALYSIS

We review questions of law *de novo* and questions of fact for clear error. *Joseph v. Sasafrasnet, LLC*, 734 F.3d 745, 747 (7th Cir. 2013). To prevail on a common law fraud claim in Illinois a plaintiff must prove five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). Anyone who aids and abets a fraud is "also guilty of the tort of fraud … ." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). To state a claim for aiding and abetting under Illinois law one must allege "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant is aware of his role when he provides the assistance,

and (3) the defendant knowingly and substantially assisted the violation." *Id*.

### A. Kaufman as Owner of Traditional Title

Kaufman argues the district court erred in finding him personally liable for aiding and abetting the fraud in his capacity as owner of Traditional Title because Illinois law shields individuals for liability for torts committed in their capacity as members of an LLC. Section 10-10 of the Illinois LLC Act provides that "the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10(a)(emphasis added); see also *Dass v. Yale*, 2013 IL App (1st) 122520, ¶ 44.

Fifth Third first argues that Kaufman waived the argument by failing to raise it prior to trial. Although an issue presented for the first time in a Rule 59(e) motion generally is not timely raised, "such an issue is subject to appellate review if the district court exercises its discretion to consider the issue on the merits." *Gerhartz v. Richert*, 779 F.3d 682, 686 (7th Cir. 2015). The district court considered Kaufman's Rule 59(e) motion raising Section 10-10 of the Illinois LLC Act on its merits so this Court will do the same.

Kaufman concludes that his liability was derivative of his ownership of Traditional Title from several portions of the judgment. In describing Fifth Third's claim, the district court stated "Fifth Third claims that Kaufman—by virtue of his roles

as owner of Traditional Title and attorney for the seller—knew that these individuals had been recruited to act as straw buyers and made material false representations to the bank in their loan applications." *Fifth Third Mortg. Co. v. Ira Kaufman*, 2017 U.S. Dist. LEXIS 150525, at *24 (N.D. Ill. July 25, 2017). The court concluded that "based on all the evidence, that Kaufman was aware of the fraudulent scheme and his participation in it as both the owner of Traditional Title and the attorney for the sellers in the various transactions." *Id.* at *30-31. The court also stated that "through his ownership of Traditional Title, Kaufman substantially assisted the fraud regarding the two disputed purchases by Daugherty and Taylor." *Id.* at *31.

Kaufman was sued in his individual capacity, and not as a member of Traditional Title and the judgment was entered against him in his individual capacity. In denying Kaufman's Rule 59(e) motion, the district clarified that Kaufman was not found liable solely as the manager of Traditional, but for his own individual acts.

Kaufman participated individually in each of the closings as counsel for the seller. He also personally directed Traditional Title's employees to conceal the fraud from Fifth Third. In these dual roles he participated in the fraud for his own personal gain. The judgment against Kaufman was not derived solely from Traditional Title's liability, based on his membership in the LLC. Section 10-10 does not bar his liability here.

### B.  Kaufman as Attorney

Kaufman argues that the district court erred in finding him personally liable for aiding and abetting the fraud as attorney for the seller, because under Illinois law there can be no

conspiracy between an agent and his principal. Kaufman also argues that any actions he took as the closing attorney did not substantially assist the fraud scheme.

Kaufman has waived this argument; he failed to raise it before the district court either before judgment or in his 59(e) motion. Additionally, there is no authority supporting Kaufman's contention that a lawyer cannot aid and abet a client's fraud as a matter of law. On the contrary, Illinois courts have said

> we see no reason to impose a per se bar that prevents imposing liability upon attorneys who knowingly and substantially assist their clients in causing another party's injury. As we have recognized, one may not use his license to practice law as a shield to protect himself from the consequences of his participation in an unlawful or illegal conspiracy. The same policy should prevent an attorney from escaping liability for knowingly and substantially assisting a client in the commission of a tort.

*Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 768 (Ill. App. Ct. 2003) (internal quotations and citations omitted).

Kaufman also argues the district court "committed prejudicial error in *sua sponte* changing the plaintiff's cause of action after the close of evidence." This argument is raised for the first time in Kaufman's reply brief, styled as an answer to Fifth Third's waiver argument. This argument goes far beyond the scope of replying to Fifth Third's response. Kaufman did not argue before the district court that it erred in, as Kaufman

characterizes it, conflating "a cause of action for common law fraud with a claim for aiding and abetting fraud." Kaufman also did not include this theory in his opening brief. This argument is also waived.

The record supports the district court's conclusion that Kaufman was substantially involved in the scheme. Kaufman reviewed closing statements, hosted the fraudulent closings at his law firm, and attended the closings despite knowing the loans were obtained using straw buyers to defraud the lenders as a part of Ahmed's scheme. Without his participation, the scheme would have failed entirely.

## III. CONCLUSION

Section 10-10 of the Illinois LLC Act does not protect Kaufman from liability. Kaufman is also not shielded by being the attorney for the seller in these fraudulent transactions. The district court's judgment against him is affirmed.