In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-3200

YASH VENTURE HOLDINGS, LLC,

*Plaintiff-Appellant,*

*v.*

MOCA FINANCIAL, INC., JOHN A. BURNS, and RAJEEV ARORA,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Central District of Illinois
No. 4:19-cv-04176 — **Sara L. Darrow**, *Chief Judge.*

_____

ARGUED MAY 28, 2024 — DECIDED AUGUST 28, 2024

_____

Before JACKSON-AKIWUMI, LEE, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Start-up companies need money to start up. To get that necessary capital, new businesses often partner with outside investors, exchanging the investors' funds today for an ownership interest in the firm tomorrow. In an ideal world, the partnership goes forward, the business prospers, and all parties are satisfied. But sometimes these would-be partnerships fall apart, the company moves on without the investor, and litigation ensues. As might be

expected, this appeal involves the latter circumstance. Specifically, this case concerns various claims brought by a possible investor against a start-up relating to an alleged oral agreement to exchange $600,000 worth of software development for a 15 percent non-dilutable ownership interest in the future company. Because the plaintiff has not pleaded factual allegations sufficient to support that any enforceable agreement was reached, we affirm.

## I. Background

Back in 2018, Defendants-Appellees John Burns and Rajeev Arora were looking for an investor for their new company, Moca Financial Inc (Moca) (collectively, with Burns and Arora, Defendants).[1] One of the individuals they approached for funds was Manoj Baheti. Plaintiff-Appellant Yash Venture Holdings, LLC, is Baheti's designee.[2] Over the course of several months, the parties engaged in discussions and exchanged documents about a possible investment in Moca. Eventually, the relationship between Defendants and Plaintiff broke down, culminating in the present litigation.

All of Plaintiff's claims—and therefore, this appeal—rest on the same set of factual allegations. Plaintiff alleges that, in late 2018, the parties agreed that Plaintiff would provide software development services in exchange for an ownership

---

[1] Moca's business focuses on providing "functionalities," including the development of certain types of payment software, to the credit card industry.

[2] For ease of understanding, this opinion will refer to Baheti and Yash Venture collectively as "Plaintiff."

in*terest* in Moca. We reproduce the critical allegation as to this exchange from the complaint in full:

> After multiple discussions regarding the investment opportunity, on or about November 18, 2018, by way of a telephone conversation, Arora, on behalf of the Defendants, orally offered Baheti, through his representative, Bala Navuluri, a fifteen percent (15%) ownership interest in Moca in exchange for $600,000 of development work related to the Software. Bala Navuluri, on Baheti's behalf, orally accepted such offer *upon the understanding Baheti's interest would not be diluted*, as compared to Burns' and Arora's interests in Moca, before issuance of stock representing such ownership interest, and through the initial capitalization of Moca. Such offer and acceptance are hereafter referenced as the Parties' Agreement.

(emphasis added).

As the complaint details, less than a month later, on December 6, 2018, Defendants provided Plaintiff with a document titled "MOU for Company Formation."[3] At the top of the page, the MOU highlighted that it related to "ongoing discussions" about Moca's formation, including its "company structure and equity pattern," and explicitly noted that "[t]he proposal [was] in the initial state of discussion."

Among other things, the MOU included additional detail as to Moca's equity structure. For instance, it contained a section labeled "Plan," indicating that the equity breakdown

---

[3] "MOU" typically stands for "Memorandum of Understanding." A copy of this document was attached to the complaint as "Exhibit A."

between Burns, Plaintiff, and Arora would be 20 percent, 15 percent, and 65 percent respectively. Plaintiff's responsibilities were described as providing initial support for software development, and the MOU further indicated that any investment above a 15 percent valuation of the company would be reimbursed.[4]

As alleged in the complaint, on March 1, 2019, Plaintiff directed one of its related companies (Yash Technologies, Inc.) to begin performing software development work. A few days after work began, on March 7, 2019, Moca provided Plaintiff with yet another document, this time one labeled "Term Sheet."[5] While the Term Sheet continued to reflect Plaintiff's proposed stake in Moca as 15 percent, it adjusted the ownership structure in other ways. Specifically, the Term Sheet now listed two additional individuals to the ownership structure and reduced Burns's stake to 15 percent. Furthermore, the proposed investment for Plaintiff's stake was changed from $600,0000 worth of software development to $600,000 in cash.

Almost two months later, on April 30, 2019, Defendants circulated a new document, labeled "Capitalization Table."[6] Unlike in the other documents, Plaintiff's stake was no longer listed as 15 percent. Instead, it had had been reduced to 7.5 percent. In contrast, Burns and Arora's stakes had increased.

---

[4] The MOU gave Moca an initial valuation of $4,000,000, making a 15 percent equity stake worth $600,000.

[5] A copy of this document was attached to the complaint as "Exhibit B."

[6] A copy of this document was attached to the complaint as "Exhibit C."

According to the complaint, Defendants informed Plaintiff that Moca was entering into strategic partnerships with other executives who needed to be compensated with equity. Defendants further explained that the executives' stakes were not listed out separately, but rather incorporated into Burns's and Arora's equity positions, due to conflicts with the executives' current employment.

Plaintiff objected to the dilution of its share, stating that it had never agreed to dilute its ownership interest and that any such dilution was contrary to the earlier agreement. On June 10, 2019, Burns responded to Plaintiff's objections in an email.[7] Burns indicated that if Plaintiff was unable to see the value that the Defendants had brought to Plaintiff's "proposed $600,000 strategic investment in Moca since the March time frame," as well as the "importance of driving valuation instead of ownership interest," Defendants were ready to "move on" without Plaintiff's investment. Alternatively, Burns offered Plaintiff an additional investment opportunity if Plaintiff wished to "maintain" its ownership position at 15 percent. Two days later, after discussions with a representative of Plaintiff, Burns emailed an updated overview of the three investment options "under consideration," none of which included 15 percent ownership in exchange for $600,000 (in cash or other services).[8]

Following this exchange, Defendants sent over documentation for Plaintiff to execute regarding its investment. Plaintiff refused to do so on the grounds that the documents did not accurately reflect its 15 percent ownership

---

[7] A copy of this email was attached to the complaint as "Exhibit D."

[8] A copy of this email was attached to the complaint as "Exhibit E."

interest in Moca. Burns subsequently emailed Plaintiff to confirm that, because the documents had not been executed, the preferred equity offering to Plaintiff had expired. Plaintiff never received any ownership interest in Moca.

Plaintiff subsequently filed the present lawsuit. The operative complaint asserts ten claims against Defendants, the first nine of which relate to Defendants' alleged failure to issue Plaintiff a 15 percent ownership interest in Moca. Specifically, Plaintiff asserted claims for securities fraud under both federal and Illinois law (Counts I and II); common law fraud (Count III); breach of contract and, in the alternative, promissory or equitable estoppel (Counts IV, V, and VI); breach of fiduciary duty against both Burns and Arora (Counts VII and VIII); and injunctive relief (Count IX). Count X, for copyright infringement, is not at issue in this appeal.

Defendants moved to dismiss, and the district court granted the motion as to all but the equitable estoppel and copyright infringement claims. Discovery proceeded as to the remaining claims. Plaintiff eventually moved to voluntarily dismiss these claims, the district court entered final judgment, and Plaintiff timely appealed.[9]

---

[9]As a brief note, in addition to challenging the district court's ruling as to the motion to dismiss, Plaintiff also seeks to appeal two other rulings—the first granting Defendants a protective order as to discovery on the equitable estoppel claim and the second denying Plaintiff leave to amend the pleadings—by the magistrate judge. Plaintiff, however, failed to file objections to either ruling, thereby waiving its right to appeal the magistrate judge's well-reasoned and thorough orders. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986); see also Fed. R. Civ. P. 72(a).

## II. Analysis

We review the dismissal of a complaint for failure to state a claim de novo. *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023). When analyzing the sufficiency of a complaint, we "must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). Still, "[t]o survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

While this appeal involves the dismissal of numerous claims, at its core, it requires us to answer only one question: does Plaintiff's complaint adequately allege the existence of an enforceable contract or, alternatively, a promise regarding the exchange of $600,000 worth of software development for a 15-percent ownership interest in Moca? If no, then each of Plaintiff's claims were properly dismissed. If yes, then we must consider whether Plaintiff's claims fail on alternative grounds.

### A. Breach of Contract

We begin our analysis with Plaintiff's breach of contract claim, as it most clearly presents the critical issue.

To establish a claim for breach of contract under Illinois law, a plaintiff must show: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6)

damages." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citation omitted).

"Under Illinois law, oral agreements are enforceable 'so long as there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement.'" *Toll Processing Servs., LLC v. Kastalon Polyurethane Prods.*, 880 F.3d 820, 829 (7th Cir. 2018) (quoting *Bruzas v. Richardson*, 945 N.E.2d 1208, 1215 (Ill. App. Ct. 2011)). In particular, "[t]he essential terms must be 'definite and certain' so that a court can ascertain the parties' agreement from the stated terms and provisions." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (quoting *Quinlan v. Stouffe*, 823 N.E. 2d 597, 603 (Ill. 2005)); *see also Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016) ("If the contract terms are too uncertain or indefinite to enforce, allegations of a breach of those terms will not provide a basis for a breach of contract claim."). As to whether a meeting of the minds occurred, courts must look to "the parties' objective conduct, not their subjective beliefs." *Dillard*, 483 F.3d at 507 (citing *Paxton-Buckley-Loda Educ. Ass'n v. Ill. Educ. Labor Relations Bd.*, 710 N.E. 2d 538, 544 (Ill. 1999)).

As the parties recognize, the crux of this claim hinges on whether Plaintiff adequately alleged that the parties had formed an oral contract to exchange $600,000 worth of software development for a 15 percent non-dilutable equity interest in Moca.

According to Plaintiff, Paragraph 8 of the complaint contains the requisite factual allegations supporting the existence of an enforceable contract. In Plaintiff's view, it does so by alleging that Defendants "orally offered" Baheti "a fifteen percent (15%) ownership interest in Moca in exchange

for $600,000 for development work" (satisfying the "offer" requirement) and that Plaintiff's representative "orally accepted" this offer "upon the understanding that Baheti's interest would not be diluted" (satisfying the "acceptance" requirement).

But in this accounting, the offer and acceptance do not match. Specifically, this disconnect arises in connection with the nature of the proposed interest in the company. As the complaint details, Defendants offered a 15 percent interest without reference to whether that interest was dilutable. The offer allegedly accepted by Plaintiff, however, consisted of a 15 percent *non-dilutable* interest in the company.

Illinois law is clear: an oral agreement, like any other contract, "must be sufficiently definite as to its material terms" to be enforceable. *Toll Processing*, 880 F.3d at 829 (citing *Wait v. First Midwest Bank/Danville*, 491 N.E.2d 795, 801 (Ill. App. Ct. 1986)); *Caremark*, 493 F.3d at 850. Thus, while "[a] contract may be enforced even though some contract terms [are] missing or left to be agreed upon," there is no contract "if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken." *See Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 589 (7th Cir. 2012) (quoting *Milex Prods., Inc. v. Alra Lab'ys., Inc.*, 603 N.E.2d 1226, 1233 (Ill. 1992)). So, if the nature of the ownership interest (dilutable or not) is a material term, and there is no meeting of the minds as to this term, the alleged oral contract would not be enforceable.

In this case, we find, based on the allegations contained within the complaint, that whether the interest was non-dilutable is material. Here, Plaintiff alleges that the breach occurred when Defendants proposed diluting Plaintiff's stake

from 15 percent to 7.5 percent. Thus, under Plaintiff's own theory of the case, there could not have been a breach without agreement as to all of terms regarding the nature of this ownership interest. Plaintiff's briefing confirms that this reading of the complaint is correct, as Plaintiff repeatedly refers to the non-dilutable nature of the proposed ownership interest as a material term. Without any factual allegations supporting an agreement as to this term, therefore, we cannot say that that the parties "selected and concurred in the terms of the contract" as required for an enforceable contract under Illinois law.[10] *Dynergy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 515 (7th Cir. 2011) (quoting *Richton v. Farina,* 303 N.E.2d 218, 223 (1973)).

Nevertheless, Plaintiff contends that it does not matter whether there was a meeting of the minds on the dilutable nature of the proposed ownership interest or, at minimum, that it is a question of fact not suitable for resolution on a motion to dismiss. In fact, it calls the entire argument a "red herring," suggesting that disagreement over whether the interest was dilutable would not affect the enforceability of the contract. This position, however, is internally

---

[10]Additionally, the "undiluted" nature of the alleged ownership interest in the offer is a critical element as to several of Plaintiff's other claims. For instance, Plaintiff's securities fraud and common law fraud claims are premised on Defendants' alleged "conduct of mispresenting a material fact regarding the percentage ownership interest Baheti/Yash Venture would receive in Moca (i.e., the Parties' Agreement Baheti/Yash Venture would receive an *undiluted* fifteen percent (15%) ownership interest in Moca…."). Likewise, Plaintiff's promissory estoppel and breach of fiduciary duty claims rest on the alleged promise "to issue Baheti/Yash Venture a fifteen percent (15%) ownership interest in Moca, *which was not to be subject to dilution.*"

inconsistent—it is difficult (if not impossible) to reconcile Plaintiff's claim that the alleged breach occurred when its share was diluted with the position that it does not matter whether the parties had agreed that its share could not be diluted.

The question of whether any given term may or may not be material is highly fact-dependent, and we must be wary of imposing any heightened pleading requirement for oral contracts. *See Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1282 (Ill. 2002) (explaining that "[e]very feasible contingency that might arise in the future need not be provided for in a contract for the agreement to be enforceable"). We therefore emphasize that the identified deficiency is predicated on the specific nature of the claims that Plaintiff raises.

Perhaps recognizing that the discrepancy as to the nature of any ownership interest is dispositive, Plaintiff insists that there is no such disconnect between the offer and acceptance. In so doing, Plaintiff puts great weight on the phrase "upon the understanding Baheti's interest would not be diluted" contained within Paragraph 8 of the complaint. In Illinois, "'[u]nilateral understandings' are not enough to give rise to an enforceable oral contract." *Dynergy Mktg.*, 648 F.3d at 515; *see also Citadel.*, 692 F.3d at 588 (noting that courts look to objective measures to determine a party's intent to be bound, not "their stated subjective intent as to the meaning of the agreement"). Accordingly, Plaintiff maintains that "the understanding" in the complaint refers to a shared understanding between the parties, not just its understanding.

But, as written, the sentence gives no indication that the "understanding" was shared between the parties. The relevant clause states: "[Plaintiff's representative] orally accepted such offer upon the understanding Baheti's interest would not be diluted…." Here, the verb "accepted" is associated with the subject of the sentence—Plaintiff's representative. It necessarily follows that the condition of acceptance, "the understanding," is similarly tied to Plaintiff's representative, and not the parties, collectively. Given this construction, reading in "shared" before "understanding" would go beyond taking reasonable inferences in Plaintiff's favor and instead add in new words that change the meaning of the sentence.

Although we can resolve this appeal based solely on the allegations contained in the complaint, without reference to any attached exhibits, we note that these documents likely undermine, rather than bolster, any allegation that Defendants intended to enter into an enforceable oral agreement.[11] It is true, as Plaintiff notes, that the MOU and Term Sheet list Baheti/Yash's ownership share as 15 percent in accord with the alleged earlier offer. Yet these documents also contain statements indicating that the parties had not yet reached an agreement. For instance, the MOU notes that it "forms the basis for *future* discussions for equity…" and is

---

[11] Briefly, as a threshold matter, Plaintiff suggest that we (and the district court) are limited to Plaintiff's own selections from and interpretation of these documents. Not so. On a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

written with "reference to the *ongoing* discussions" around Moca's creation. The (unsigned) Term Sheet similarly references an "initial seed round," which appears to contemplate later (potentially dilutive) funding rounds.[12] And, in any event, none of these documents indicate one way or the other whether Plaintiff's ownership interest was to be dilutable.

For the forgoing reasons, we find that Plaintiff has not adequately pleaded the existence of a contract to sustain its breach of contract claim. Dismissal was proper.

## B. Promissory Estoppel

Next, we address Plaintiff's promissory estoppel claim. To establish a claim for promissory estoppel under Illinois law, a plaintiff must show that (1) the defendant made an unambiguous promise to the plaintiff; (2) the plaintiff relied on that promise; (3) the plaintiff's reliance was expected and foreseeable by the defendant; and (4) the plaintiff relied on the promise to its detriment. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009).

According to the complaint, the "unambiguous promise" made by Defendants was one "to issue Baheti/Yash Venture a

---

[12] The explicitly preliminary nature of these documents also undercuts Plaintiff's claim that these exhibits could have been used to support the existence of the parties' agreement as to other likely material terms, such as the form of the ownership interest (e.g., common or preferred stock), or the timing of when that interest will vest. *See, e.g.*, *Kap Hldgs., LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 524–25 (7th Cir. 2022) (finding that a plaintiff had not alleged an enforceable contract where the term sheet had not agreed to specific terms as to elements such as the details of a non-disclosure agreement or the return policy or the contract's timeline). These documents are silent as to these terms.

fifteen percent (15%) ownership interest in Moca, *which was not to be subject to dilution*." As already discussed, Plaintiff has not alleged that Defendants made any promise for a 15 percent *non-dilutable* interest in Moca. Accordingly, this claim must similarly fail.

Before moving to Plaintiff's remaining claims, we briefly recognize that there is no dispute that Plaintiff is entitled to payment for any work performed. Importantly, however, Plaintiff is seeking a particular form of compensation—specific performance ordering Defendants to issue it an undiluted 15 percent equitable stake in Moca—in this litigation. "Specific performance is an exceptional remedy and is normally available only when damages constitute an inadequate remedy." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007). Moreover, it is an appropriate remedy "only when the terms of the contract are sufficiently specific to allow the precise drafting of such an order." *Id.* (citing *Crane v. Mulliken*, 408 N.E.2d 778, 780 (Ill. 1980)). To the extent that our holding today finds Plaintiff's complaint deficient, we emphasize that it is deficient only insofar as it fails to support this particular form of requested relief.

### C. Common Law Fraud

Plaintiff also seeks recovery from Defendants for common law fraud. Under Illinois law, a plaintiff bringing such a claim must show: "(1) a false statement of material fact; (2) known or believed to false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Fifth Third Mortg. Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019).

Plaintiff alleges that Defendant made a false statement of material fact in representing that Plaintiff "would receive an *undiluted* fifteen percent…ownership interest in Moca." But, as discussed, the factual allegations in the complaint do not support the claim that Defendants made such a statement, particularly as to the undiluted nature of the proposed equity stake. This claim therefore must likewise fail.

**D. Securities Law**

Outside of these common law claims, Plaintiff also brings claims for securities fraud under both Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12. Because Illinois courts look to federal securities law to interpret claims brought under state law, the federal and state claims rise and fall together. *See Tirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138, 1142 (Ill. App. Ct. 2004).

To establish a securities fraud claim, a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir. 2015) (citation omitted). A legally enforceable contract, including oral agreements, for the sale of stock may satisfy the third element—the purchase or sale of a security. *See Wharf (Hldgs.) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 595 (2001).

Because, as pleaded in the complaint, Plaintiff's securities law claims assume the existence of a legally enforceable

contract and we have found none, those claims were properly dismissed for the same reasons as Plaintiff's other claims.

### E. Breach of Fiduciary Duty

We end with consideration of Plaintiff's breach of fiduciary duty claims against Burns and Arora. To establish a claim for breach of fiduciary duty, a plaintiff must plead "the existence of a fiduciary duty, breach of that duty, and damages proximately resulting from that breach." *Autotech Tech. Ltd. v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)).

According to Plaintiff, Burns and Arora acted as "promoters" of Moca, and such promoters owe a fiduciary duty to those who have subscribed to the company's stock. Even assuming without deciding that Plaintiff is correct that a stock subscription can form the basis of a fiduciary duty,[13] Plaintiff must sufficiently allege the existence of such a subscription. According to Plaintiff, the alleged November 2018 oral exchange constituted a stock subscription agreement and thereby created a fiduciary duty. We have

---

[13] The parties do not specify or address which state law—Illinois or Delaware—governs the analysis of whether a stock subscription can form the basis of a fiduciary duty. Although Plaintiff's breach of fiduciary duty claim was brought under Illinois law, Plaintiff seeks to establish the existence of that fiduciary duty in reliance on Delaware law (Moca is incorporated in Delaware). Both parties cite Illinois and Delaware law interchangeably when addressing the question of whether a promoter can owe a fiduciary duty to a future stockholder. However, because Plaintiff fails to establish the threshold requirement—a stock subscription agreement—we need not address whether such an agreement could in turn create a fiduciary duty. Accordingly, we also need not reach the question as to which state law applies to that analysis.

already exhaustively detailed why this exchange, as alleged, did not establish an enforceable agreement. We need not repeat our reasoning and note only that this claim fails on the same grounds as Plaintiff's other claims.

### III. Conclusion

As detailed above, each of Plaintiff's individual claims depends on one fundamental assertion—that Defendants must issue Plaintiff a 15 percent equity interest in Moca today on the basis of an oral contract allegedly made in November 2018. Because we find that the well-pleaded facts in the complaint do not give rise to the plausible inference that the November 2018 exchange resulted in an enforceable agreement, each of these claims must fail. Accordingly, the judgment of the district court is affirmed.