In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 24-1858

ANDREA RATFIELD, *et al.*,

*Plaintiffs-Appellants,*

*v.*

UNITED STATES DRUG TESTING LABORATORIES, INC., *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-15063 — **Robert W. Gettleman**, *Judge.*

---

ARGUED JANUARY 16, 2025 — DECIDED JUNE 13, 2025

---

Before SCUDDER, KIRSCH, and LEE, *Circuit Judges.*

LEE, *Circuit Judge*. Plaintiffs, comprised of Andrea Ratfield, ten other pilots, a physician, a nurse, and an attorney, were all required to undergo alcohol testing to maintain their employment and professional licenses. Here, the testing came in the form of a dried blood spot test developed by United States Drug Testing Laboratories, Inc. (USDTL). According to USDTL, its test (which we will refer to as DBS) is designed to

detect phosphatidylethanol (PEth), a biomarker of alcohol consumption. The DBS tests for Ratfield and the others indicated positive for PEth, presumably meaning that they had continued to consume alcohol even while participating in their treatment programs. These positive tests, Plaintiffs allege, resulted in significant professional harm.

Asserting that the DBS tests were not as reliable as USDTL touted, the fourteen individuals sued USDTL and two of its officers (collectively, the USDTL Defendants) under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (RICO), and state law. They also named as defendants Choice Labs Services (CLS), the company that provided the DBS tests to the test administrators, and its owners (collectively, the CLS Defendants). The district court dismissed the RICO claims under Federal Rule of Civil Procedure 12(b)(6) and denied supplemental jurisdiction as to the state law claims. We affirm.

## I

The crux of Plaintiffs' RICO claims is their allegation that USDTL marketed its DBS test as a reliable indicator of continuing alcohol use when, in fact, the company had failed to confirm the test's validity and reliability. Some background into the various players will be helpful.[1]

USDTL is a business-to-business specimen testing laboratory that developed the DBS test. Douglas Lewis is USDTL's

---

[1] The background facts are taken from the second amended complaint. On appeal, we treat the allegations as true and view them in the light most favorable to Plaintiffs. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

founder, president, and scientific director, and Joseph Jones is USDTL's chief operating officer and executive vice president.

The Centers for Medicare and Medicaid Services (CMS) is the federal agency that regulates all non-research laboratory testing on humans in accordance with the Clinical Laboratory Improvement Amendments, 42 U.S.C. § 263a, and its implementing regulations, 42 C.F.R. Part 493 (together, CLIA). The purpose of the CLIA is to ensure the accuracy and reliability of laboratory tests, and CLIA certification signifies that a laboratory has met statutory and regulatory conditions. USDTL claims to be CLIA-certified and -compliant.

Ratfield and the other pilots participated in the Human Intervention Motivational Study (HIMS) program, a substance abuse treatment program that helps professional pilots return to cockpits after recovering from alcohol or other substance use disorders. HIMS requires pilots to submit to frequent drug or alcohol testing to rule out continued use.

CLS is a Georgia-based company that performs drug testing and recovery monitoring services. It is owned by Lisa Michele and Robert Gable. HIMS used CLS to oversee the testing of program participants for alcohol consumption. And CLS directed the pilots to certain laboratories and instructed the laboratories to use USDTL's DBS test for this purpose.[2] According to Plaintiffs, USDTL compensated CLS for

---

[2] At one point in their second amended complaint, Plaintiffs allege that it was CMS that directed the pilots to certain laboratories for testing. But the remaining allegations demonstrate that this was a typographical error.

funneling individuals in occupational substance abuse treatment programs to these laboratories and for supplying the laboratories with the DBS tests.[3]

Plaintiffs initially filed suit in December 2022 against the USDTL Defendants in the Southern District of Florida, asserting claims for common law fraud and negligence. They later amended the complaint, claiming that the USDTL Defendants also violated RICO by committing mail and wire fraud. Specifically, Plaintiffs alleged that the USDTL Defendants fraudulently misrepresented that their DBS test was accurate and reliable and reaped financial gains as a result. The district court dismissed the case without prejudice, concluding that the complaint had failed to adequately allege that the RICO enterprise had been sufficiently distinct from the corporate individuals or that the USDTL Defendants had caused the purported harm. As a result, Plaintiffs filed a second amended complaint, this time adding the CLS Defendants.

The district court then transferred the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), at which point Defendants filed a motion to dismiss the second amended complaint for failure to state a claim. The district court granted the motion and later denied Plaintiffs' motion to alter or amend the judgment under Rules 59(e) and 60(b). This appeal followed.

---

[3] Although their individual circumstances are not exactly clear, the other three Plaintiffs (a doctor, nurse, and attorney) also took USTDL's DBS tests provided by CLS as a condition of maintaining their professional licenses and employment. The particular details are not relevant to this appeal.

## II

We review *de novo* the district court's order dismissing Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). "When analyzing the sufficiency of a complaint, we 'must construe it in the light most favorable to [Plaintiffs], accept well-pleaded facts as true, and draw all inferences in [Plaintiffs'] favor.'" *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 656 (7th Cir. 2024) (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014)). The "complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Flores v. City of S. Bend*, 997 F.3d 725, 728–29 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, because Plaintiffs' civil RICO claims sound in fraud, the circumstances must be described "with particularity" to satisfy Rule 9(b)'s heightened pleading requirement. Fed. R. Civ. P. 9(b); *see Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

### A. RICO Claims

Although the parties joust over the many requirements a claimant must satisfy in order to successfully allege a civil RICO claim, our analysis begins and ends with causation.

To state a claim for civil RICO, a claimant must allege that he was "injured in [his] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The Supreme Court has interpreted the "by reason of" language in § 1964(c) to signify not only "but for" causation but also proximate causation. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plurality opinion) (citing *Holmes v. Sec. Investor Prot.*

*Corp.*, 503 U.S. 258, 268 (1992)). In the words of the Supreme Court, RICO "incorporate[s] common-law principles of proximate causation," including a "demand for some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 267–68; *see also Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 729 (7th Cir. 2014) (citing cases). "The key word is 'direct'; foreseeability does not cut it." *Med. Marijuana, Inc. v. Horn*, 604 U.S. ----, 145 S. Ct. 931, 945 (2025) (quoting *Hemi Grp.*, 559 U.S. at 12); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Here, Plaintiffs have not adequately alleged that Defendants' fraudulent scheme (which we will assume for present purposes) proximately caused their injuries. As they see it, USDTL misrepresented—in marketing statements, informational materials, research articles, and documents provided to clients—the efficacy of its DBS test in detecting alcohol consumption as well as how to properly administer the test. These misrepresentations, Plaintiffs allege, include: (1) the test's effectiveness in detecting alcohol use; (2) the impact of ethanol-based hand sanitizers on test results; (3) how far back in time a DBS test could detect alcohol use; (4) the proper protocol for preparing specimens before testing; (5) the proper use of plastic bags in test collection; (6) the reliability of the PEth level used to indicate a positive test; and (7) the frequency of false-positive test results.

But even if we assume that Plaintiffs are correct, they still must draw a direct causal link between these statements and the professional injuries they suffered. "A link that is too

remote, purely contingent, or indirect is insufficient." *Hemi Grp.*, 559 U.S. at 9 (citation modified). Even a cursory review of the complaint reveals that Plaintiffs have fallen short.

The causal chain between USDTL's alleged fraud and Plaintiffs' injuries is circuitous at best. The complaint is devoid of any allegation that Plaintiffs' employers (or similar decisionmakers), who were responsible for making the employment and licensing determinations, were aware of USDTL's marketing materials or any other statements regarding the efficacy of its DBS test. Nor is there any allegation that HIMS or the other treatment program administrators knew about these assurances. Furthermore, although the complaint paints CLS as a knowing middleman between USDTL and the various program administrators, nowhere do Plaintiffs claim that CLS (presumably acting as an agent of USDTL) conveyed any of the alleged misinformation to the program administrators or the employers. Such a tenuous, serpentine causative path does not satisfy RICO's proximate causation requirement.

What is more, to the extent that CLS, with knowledge of USDTL's falsehoods, caused the testing facilities to use USDTL's DBS tests without relaying the misrepresentations to the program administrators and employers who would rely on them, its actions would sever the causal chain between USDTL's alleged falsehoods and Plaintiffs' professional injuries. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008) (noting that an "intervening cause" would break "the chain of causation" between a RICO defendant's misrepresentations and the alleged injury).

Finally, despite Plaintiffs' conclusory assertions that USDTL's misstatements caused their injuries, nothing in the complaint creates a plausible inference that the employers

reasonably relied on these misstatements in making their decisions about Plaintiffs' employment and licensing status. *See id.* at 658–59 (explaining that proving proximate causation is difficult without a showing of reliance). Indeed, the complaint does not explain how the employers learned of the misstatements, what exactly they learned, from whom they learned of them, when they learned of them, or whether they would have made the same decisions anyway. As a result, the complaint falls far short of satisfying Rule 9(b)'s specificity requirement. *See Vicom*, 20 F.3d at 777 (Rule 9(b) requires "the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff[.]") (internal quotation marks omitted).[4]

Accordingly, Plaintiffs' allegations do not give rise to a reasonable inference that any of Defendants' alleged misrepresentations led directly to their employment-related injuries and, thus, fail RICO's proximate-cause requirement. Furthermore, because the RICO claims under 18 U.S.C. § 1962(a), (b), and (c) were deficient on this ground, Plaintiffs' RICO conspiracy claims under § 1962(d), which are based on the same operative facts, also fail. *See United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856–57 (7th Cir. 2013).

---

[4] Plaintiffs argue on appeal that the pertinent false statements were the test results themselves. Yet, the second amended complaint contains no allegations that the DBS test results were fabricated or that the test did not measure what it purported to measure.

**B. State Law Claims**

Having dismissed the RICO claims, the district court relinquished supplemental jurisdiction over the state law claims, dismissing them without prejudice under 28 U.S.C. § 1367(c)(3). Plaintiffs assert that the district court instead should have remanded the state law claims to state court. But Plaintiffs provide no support for their argument that a district court may remand to state court a case that originated in federal court. *See First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 467–68 (6th Cir. 2002) ("[W]hile a district court has the discretion to remand a case removed from state court, it may not remand a case that was never removed from state court[.]"); *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.*, 999 F.2d 745, 751 (3d Cir. 1993) (same). In any event, the district court acted in accordance with long-standing practice and did not err. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (explaining that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial").

**III**

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Plaintiffs' RICO claims with prejudice and the state law claims without prejudice.